1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DONALD W. WILTON,

        Plaintiff,

    v.

MASTER SOLUTIONS, INC., *et al.*,

        Defendants.

Case No.  C12-66RSL

ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. # 28) filed by Defendants Master Solutions, Inc. ("MSI") and David Lutz (collectively "Defendants").

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and identifying those portions of the materials in the record that show the absence of a genuine issue of fact, Fed. R. Civ. P. 56(c)(1).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT - 1

1   is a genuine issue for trial." <u>Celotex Corp.</u>, 477 U.S. at 324.  "The mere existence of a scintilla

2   of evidence in support of the non-moving party's position is not sufficient."  <u>Triton Energy</u>

3   <u>Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995).  "[S]ummary judgment should be

4   granted where the nonmoving party fails to offer evidence from which a reasonable jury could

5   return a verdict in its favor."  <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d

6   626, 631 (9th Cir. 1987).

7          Having reviewed the memoranda, declarations, and exhibits submitted by the parties,

8   considered the parties' arguments during the January 25, 2013 hearing, and taking the light most

9   favorable to the Plaintiff, the Court finds as follows:

10                                      **II.  BACKGROUND**

11         MSI is a family owned business located in Carlisle, Pennsylvania, that manufactures and

12  sells material handling products and tractor trailers. Dkt. # 29-1 at 6-9.  Defendant David Lutz

13  and his father co-own MSI.  <u>Id.</u> at 4.  At its peak in the late 1990s, MSI employed more than 80

14  people and provided a variety of material handling products and services through its

15  TransMaster Trailer division.  <u>Id.</u> at 7.  Over the years, MSI decreased in size and altered its

16  business model slightly as demand changed.  <u>Id.</u> at 7, 9-10.  In an effort to make up for a recent

17  decline in trailer sales, MSI created the Mov'N Floors division to design, create, and sell a

18  moving floor system in 2009.  Dkt. # 30 ¶ 2.

19         Plaintiff Donald Wilton originally met Mr. Lutz at a trade show in 2003, where Mr.

20  Wilton was representing his former employer, Hallco Manufacturing. Dkt. # 36 ¶ 3.  Mr. Wilton

21  reconnected with Mr. Lutz in December 2008.  Mr. Lutz contacted him to discuss the moving

22  floor industry because Mr. Wilton had significant experience working with moving floor

23  systems during his employment with Hallco, one the leading manufacturers of moving floor

24  systems at the time.  <u>See</u> Dkt. # 29-2 at 5-6.  Mr. Wilton and Mr. Lutz discussed the current

25  demand for moving floor systems and MSI's potential for building a successful moving floor

26  business.  In March 2009, once Mr. Wilton and Mr. Lutz were satisfied that MSI could fill a gap

27

28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT - 2

1   in the existing market, MSI hired Mr. Wilton as Vice President of Sales.  Dkt # 36 ¶ 4.  Mr.

2   Wilton was 67 or 68 at that time.  See Dkt. # 29-2 at 3.

3       Mr. Wilton was hired to help develop MSI's moving floor system and manage the moving

4   floors sales team.  Dkt # 36 ¶¶ 4-5.  Mr. Lutz also hoped Mr. Wilton would help the trailer sales

5   team when possible, but he did not expect him to make any trailer sales.  Dkt. # 29-1 at 19; Dkt.

6   # 36 ¶ 5.  At the time of his hire, Mr. Wilton's compensation consisted of $60,000 per year

7   salary and health insurance.  Dkt. # 29-1 at 19; Dkt. # 36 ¶ 4.  Mr. Lutz also told Mr. Wilton that

8   he would receive all of the benefits set forth in MSI's employee handbook, but Mr. Wilton never

9   received or read the employee handbook.  Dkt. # 36 ¶ 4.

10      Mr. Wilton worked remotely from his home in Covington, Washington, and traveled

11  occasionally for sales conferences.  Dkt. # 29-2 at 21-22.  Even though Mr. Wilton was not

12  physically located in Pennsylvania, he communicated with Mr. Lutz almost daily via phone or e-

13  mail.  He saw Mr. Lutz approximately 20 times during his two years of employment with MSI.

14  Dkt. # 36 ¶ 6.  Mr. Wilton had a good relationship with Mr. Lutz.  Dkt. # 29-2 at 23, 25.

15      MSI completed production of its moving floor system in February 2010, and Mr. Lutz

16  was eager to hire additional sales staff for the Mov'N Floors division.  Dkt. # 30 ¶ 7.  In 2010,

17  MSI hired three sales representatives to market and sell moving floor systems.  Dkt. # 31 ¶ 2;

18  Dkt. # 32 ¶ 2; Dkt. # 36 ¶ 6; Dkt. # 36 ¶ 5.  Jeff Conner, a current MSI sales representative who

19  worked primarily for the Transmaster Trailer division, began performing a little work for the

20  Mov'N Floors division.  Dkt. # 36 ¶ 5.  By the end of 2010, MSI's moving floors sales team

21  consisted of Mr. Wilton, Mr. Conner, John Bott, and Mike Wilton, Donald Wilton's son.  Id. ¶ 6.

22      Unfortunately, MSI's focused efforts in the moving floors industry did not result in

23  immediate success.  In 2010, MSI sold only four moving floor systems, Dkt. # 30 ¶ 8, and by

24  early 2011, the Mov'N Floors division faced significant financial challenges, Dkt. # 29-4.  Mr.

25  Lutz realized that MSI had expanded its employee base prematurely and it had little money

26  remaining to fund the project.  Id.  In January 2011, MSI terminated Mike Wilton's employment

27

28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT - 3

1  in an effort to save additional money.  Id.; Dkt. # 29-5.

2      In March 2011, MSI's moving floor business had not gained momentum.  Mr. Lutz and

3  his father determined that MSI could no longer afford to pursue the moving floor business.

4  While attending a conference in Las Vegas in March 2011, Mr. Lutz told Mr. Wilton that MSI

5  could not continue to pay his salary.  Dkt # 29-2 at 66-67.  During this conversation, Mr. Lutz

6  asked Mr. Wilton for ideas to keep the business going.  Dkt. # 29-1 at 22-23; Dkt. # 29-8 at 92.

7  In a follow up e-mail sent a few days later, Mr. Lutz reiterated his willingness to hear Mr.

8  Wilton's ideas to keep the business going.  He also reiterated that unless they were able to find a

9  new source of funding, Mr. Wilton's final day would be April 23, 2011.  Dkt. # 29-8.

10      A few days after Mr. Lutz talked to Mr. Wilton, Mr. Lutz told Mr. Bott that he too would

11  be let go after a few days because MSI could not afford to pay his salary.  Dkt. # 29-1 at 22-23.

12  Unlike Mr. Wilton, Mr. Bott chose to continue working  for MSI for an additional month on a

13  commission only basis.  Dkt. # 31 ¶ 2.  Mr. Bott resigned from MSI in May 2011 after he

14  obtained more reliable employment.  Id.  After Mr. Bott resigned, the only employee remaining

15  who had worked for the Mov'N Floors division was Mr. Conner.  Dkt. # 30 ¶ 10.  Mr. Conner

16  left MSI in July 2011.  Id.

17      During the final few months leading up to Mr. Wilton's termination, Mr. Wilton's

18  relationship with Mr. Lutz changed.  Mr. Lutz began making comments that Mr. Wilton found

19  offensive.  Dkt. # 36 ¶ 8.  For example, during a sales conference several employees gathered for

20  a picture and Mr. Lutz told Mr. Wilton that he looked a little washed out in his grey shirt

21  because Mr. Wilton has grey hair.  Id.  Other times, Mr. Lutz also questioned Mr. Wilton's

22  memory, reflexes and vision.  Id.  Mr. Lutz also asked Mr. Wilton if he were going to retire

23  soon, given that he had just received a settlement from an earlier lawsuit.  Id.  While traveling

24  together, Mr. Lutz offered to carry Mr. Wilton's bag to the gate at the airport.  Id.

25      Finally, in late March 2011, Mr. Lutz asked Mr. Wilton if would be able to walk from the

26  car in the parking lot to the hotel.  Id.  At this point, Mr. Wilton became angry.  He found the

27

28  ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT - 4

1  remarks offensive, embarrassing, and unnecessary. Id. He told Mr. Lutz to stop making

2  comments about his age because they were offensive. The following morning, Mr. Lutz told Mr.

3  Wilton that MSI could no longer afford to pay his salary. Id. ¶ 9.

4  ### III. DISCUSSION

5  **A.    Defendants' Motion to Strike[1]**

6          As a preliminary matter, in their Reply, Defendants move to strike various portions from

7  Mr. Wilton's declaration and Exhibits B, C, D, and E attached to Mr. Wilton's declaration.

8  Defendants argue that Mr. Wilton lacks personal knowledge of the contents of the statements,

9  and the statements are irrelevant, conclusory and contradictory to Mr. Wilton's prior deposition

10 testimony. Dkt. # 24 at 2-3. A declaration submitted to support or oppose a motion for

11 summary judgment must be based on personal knowledge and show that the declarant is

12 competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The Court has read Mr.

13 Wilton's 36-page declaration in its entirety. The Court has considered the statements of fact that

14 appear to be within Mr. Wilton's personal knowledge that are not otherwise inadmissible and

15 has disregarded all other arguments, legal conclusions, speculation, and improper opinion

16 testimony.

17         The Court has also reviewed the exhibits attached to Mr. Wilton's declaration and notes

18 that "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a

19 form that would be admissible at trial." Block v. City of L.A., 253 F.3d 410, 418-19 (9th Cir.

20 2001). Although Exhibits B-E may not be properly authenticated in their current form, the Court

21 finds that these documents could be properly authenticated at trial.

22

23

24         [1] At oral argument, Plaintiff made an oral motion to strike the declarations of Stanley Fisher and
25 John Bott on the grounds that Defendants did not list those people as possible witnesses in their initial
   disclosures or produce their declarations during discovery. The Court DENIED the oral motion to strike
26 as untimely. The Court also noted that Plaintiff was aware of these individuals before receiving their
   declarations because Plaintiff named them in his initial disclosures.
27

28 ORDER GRANTING IN PART MOTION
   FOR SUMMARY JUDGMENT - 5

1    **B.      Washington Law Against Discrimination ("WLAD")[2]**

2        **1.      Hostile Work Environment**

3        To establish a claim of hostile work environment based on age, Mr. Wilton must show

4    that the alleged harassment  (1) was unwelcome, (2) was because he is a member of a protected

5    class, (3) affected the terms and conditions of his employment, and (4) was imputable to his

6    employer.  Antonius v. King Cnty., 153 Wn.2d 256, 261 (2004).

7        Defendants contend that they are entitled to summary judgment on Mr. Wilton's hostile

8    work environment claim because some of the comments identified by Mr. Wilton are not related

9    to Mr. Wilton's age.  Dkt. # 28 at 9-10.  Defendants also argue that the remaining comments

10   identified by Mr. Wilton were insufficient to alter the terms and conditions of his employment.

11   In opposition to summary judgment, Mr. Wilton argues that all of the harassing comments "dealt

12   with Wilton's age" and affected the terms and conditions of his employment.  Dkt. # at 8-13.

13       Whether the conduct was severe or pervasive enough to alter the terms and conditions of

14   employment may be determined by examining the totality of circumstances, including the

15   frequency and severity of the harassing conduct, whether it was physically threatening or

16   humiliating or merely an offensive utterance, and whether it unreasonably interfered with the

17   employee's work performance.  Washington v. Boeing Co., 105 Wn. App. 1, 10 (2000).

18   "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the

19   terms or conditions of employment to a sufficiently significant degree to violate the law."  Id.

20   The conduct must be objectively and subjectively abusive.  Adams v. Able Bldg. Supply, Inc.,

21   114 Wn. App. 291, 297 (2002).

22       Although, many of Mr. Lutz's comments are not directly related to Mr. Wilton's age, Dkt.

23

24       [2]Defendants argue that Mr. Wilton's age discrimination claims brought under Title VII of the
25   Civil Rights Act of 1964 ("Title VII") must be dismissed because Title VII does not prohibit
     discrimination on the basis of age.   Dkt. # 28 at 8.  Mr. Wilton concedes that he does not assert a
26   discrimination claim under federal law.  Dkt. # 34 at 1 n.1.  Therefore, the Court GRANTS Defendants'
     request for summary judgment on Mr. Wilton's federal age discrimination claims.
27

28   ORDER GRANTING IN PART MOTION
     FOR SUMMARY JUDGMENT - 6

# 36 ¶ 8 ("grey is not your color," "[a]re you okay to drive?" offering to carry Mr. Wilton's bag at the airport), others target Mr. Wilton's age directly, id. ("He's getting a little too old for cheesecake," "it's your age catching up with you," asking whether, at his age, he could walk from the car to the hotel).  Viewing the facts in the light most favorable to Mr. Wilton, the Court finds that Mr. Wilton has established that the harassment was because of his age and it was unwelcome.  With respect to the third element of his harassment claim, the Court finds that the evidence is sufficient to create an issue of fact regarding whether Mr. Lutz's conduct altered the conditions of his employment.  At trial, Mr. Wilton will have a greater burden to show that the conduct was sufficiently pervasive so as to alter the conditions of his working environment.  However, construing the facts in a light most favorable to the nonmoving party, as the Court must at the summary judgment stage, the Court finds that Mr. Wilton has presented sufficient evidence to create an issue of fact regarding the pervasive nature of Mr. Lutz's conduct.  With respect to the fourth element, it is indisputable that Mr. Lutz's conduct as Mr. Wilton's supervisor and a co-owner of MSI is imputable to MSI.  The Court finds at this state of the case that genuine issues of material fact regarding Mr. Wilton's hostile work environment claim exist and, therefore, DENIES Defendants' motion for summary judgment on this claim.

## 2. Disparate Treatment

Washington courts apply the burden shifting framework announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) when analyzing a claim of age discrimination on a motion for summary judgment.  Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 180-81 (2001), overruled on other grounds, McClarty v. Totem Elec., 157 Wn.2d 214 (2006).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination.  The burden of persuasion then shifts to the employer to produce a legitimate non-discriminatory reason for the adverse employment action.  Id. at 181.  If the employer meets this burden, the burden of proof returns to the plaintiff to show that the employer's stated reason was pretext.  Id. at 182.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT - 7

To establish a prima facie case of age discrimination in violation of the WLAD, Mr. Wilton must establish (1) he is within the statutorily protected age group, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by a younger person. Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 88 (2012) (citing Grimwood v. Univ. Puget Sound, Inc., 110 Wn.2d 355, 362 (1988)).

Defendants do not dispute that Mr. Wilton has satisfied the first, second, and third elements of a prima facie case. Dkt. # 28 at 12. Defendants contend, however, that Mr. Wilton cannot establish the fourth element because MSI terminated its moving floors employees, stopped actively marketing moving floor systems, and returned its focus to tractor trailers. Id. at 12-13. However, the Court need not determine whether Mr. Conner replaced Mr. Wilton as alleged because the elements of a prima facie case are not rigid. Cluff v. CMX Corp. Inc., 84 Wn. App. 634, 637-38 (1997). Washington courts have dispensed with the requirement of showing replacement in age discrimination cases involving a reduction in force. Id. at 638. The Court finds that Plaintiff has established a prima facie case.

The burden then shifts to Defendants to present a nondiscriminatory reason for Mr. Wilton's termination. Hill, 144 Wn.2d at 181. MSI hired Mr. Wilton in March 2009 to help MSI design, market, and sell moving floor systems. Dkt. # 29-1 at 19. By early 2011, MSI and Mr. Wilton were aware that MSI's financial resources were dwindling. Dkt. # 29-4; Dkt. # 29-6. MSI determined that it could no longer afford to pursue the moving floor business and it began shutting down the operation. See Dkt. # 29-5; Dkt. # 29-8; Dkt. # 31 ¶ 2. By late spring 2011, Mr. Conner, who was hired primarily to work in MSI's tractor trailer division, was the only remaining MSI employee who had once been involved in MSI's moving floor business. Dkt. # 29-2 at 35; Dkt. # 30 ¶ 10. Defendants have met their burden to establish a nondiscriminatory reason for terminating Mr. Wilton's employment.

Finally, to avoid summary judgment Mr. Wilton must establish that the nondiscriminatory reason is pretext for the discriminatory reason for his termination. Hill, 144 Wn.2d at 182. Mr.

ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT - 8

1    Wilton argues that MSI's stated reason for his termination, lack of sales volume and financial
2    difficulties, is a pretext because MSI's total revenue increased in 2011 and sales were increasing
3    at that time.  Dkt. # 34 at 6.  While it may be true that MSI's total revenue increased in 2011,
4    Mr. Wilton fails to provide any evidence that contradicts MSI's explanation that MSI stopped
5    producing and marketing moving floor systems in 2011.  Furthermore, MSI has produced
6    evidence that the increase in total revenue in 2011 was due to an increase in trailer sales, not
7    moving floor systems, and Mr. Wilton does not offer any evidence to rebut this explanation.
8    Dkt. # 29-1 at 28.

9         Mr. Wilton has not provided sufficient evidence to overcome summary judgment and
10   therefore, Defendants' motion is GRANTED as to Mr. Wilton's disparate treatment claim.

11        **3.    Retaliation**

12        Mr. Wilton contends that MSI terminated his employment in retaliation for his complaint
13   about Mr. Lutz's harassing comments.  Dkt. # 34 at 15.[3]  In addition to prohibiting
14   discrimination based on age, the WLAD makes it unlawful for an employer "to discharge, expel,
15   or otherwise discriminate against any person because he or she has opposed any practices
16   forbidden by this chapter."  RCW 49.60.210.  To present a prima facie case of retaliation under
17   the WLAD, Mr. Wilton must show that he engaged in protected activity, he was discharged or
18   had some adverse employment action taken against him, and retaliation was a substantial motive
19   behind the adverse employment action.  Kahn v. Salerno, 90 Wn. App. 110, 128-29 (1998).  The
20   burden shifting framework for retaliation claims is the same as that used for discrimination
21   claims.  Short v. Battle Ground Sch. Dist., 169 Wn. App. 188, 204 (2012).  If Defendants
22   produce some evidence of a nonretaliatory reason for terminating Mr. Wilton's employment,

23

24        [3] Defendants assert that Mr. Wilton failed to adequately plead a claim of retaliation under the
25   WLAD.  Dkt. # 37 at 3 n.1.  Although the complaint does not refer to retaliation under the section
     entitled "Washington Laws Against Discrimination," the complaint meets Washington's liberal rules of
26   pleading because it contains "direct allegations sufficient to give notice to the court and the opponent of
     the nature of the plaintiff's claim."  Berge v. Gorton, 88 Wn.2d 756, 762 (1977).
27

28   ORDER GRANTING IN PART MOTION
     FOR SUMMARY JUDGMENT - 9

1  then the burden shifts back to Mr. Wilton to show that Defendants' stated reason for his

2  termination is actually pretext for a retaliatory purpose for his termination. Id. at 205-06.

3        "The plaintiff need not show that retaliation was the only or 'but for' cause of the adverse

4  employment action, but he or she must establish that it was at least a "substantial factor."

5  Francom v. Costco Wholsesale Corp., 98 Wn. App. 845, 862 (2000).  Close proximity in time

6  between the protected activity and the employment action is one factor supporting retaliatory

7  motive. Hollenback, 149 Wn. App. 810, 823 (2009).  "Moreover, if the employee establishes

8  that he or she participated in an opposition activity, the employer knew of the opposition

9  activity, and he or she was discharged, then a rebuttable presumption is created in favor of the

10 employee that precludes us from dismissing the employee's case." Estevez v. Faculty Club of

11 Univ. of Wash., 129 Wn. App. 774, 799 (2005) (quoting Vasquez v. State, 94 Wn. App. 976,

12 985 (1999)).

13       Defendants do not dispute that Mr. Wilton's employment was terminated the day after he

14 complained to Mr. Lutz about Mr. Lutz's harassing comments.  Mr. Wilton contends that the

15 temporal proximity between his complaint and termination are sufficient to establish a prima

16 facie case. Dkt. # 34 at 2.  The Court agrees that close temporal proximity between protected

17 activity and the alleged retaliatory action can establish a causal link between the two events,

18 Estevez v. Faculty Club of Univ. of Wash., 129 Wn. App. 774, 799 (2005).  Based on the short

19 time period between Mr. Wilton's complaint and his termination, the Court finds that Plaintiff

20 has established a prima facie case of retaliation.

21       The burden then shifts to Defendants to present a nonretaliatory reason for terminating

22 Mr. Wilton's employment. Short, 169 Wn. App. at 204.  Defendants terminated Mr. Wilton's

23 employment because MSI shut down its entire moving floor business. Dkt. # 37 at 9.  MSI

24 terminated Mr. Wilton's son's employment earlier in the year and stopped paying Mr. Bott's

25 salary a few weeks before Mr. Wilton's termination became effective.  Defendants have

26 articulated a nonretaliatory reason for terminating Mr. Wilton's employment.  Therefore, Mr.

27

28 ORDER GRANTING IN PART MOTION
   FOR SUMMARY JUDGMENT - 10

1  Wilton must show that this reason was pretextual.

2      At the summary judgment state of pretext, Mr. Wilton must provide evidence that

3  supports an inference that his complaint about Mr. Lutz was a "substantial" factor motivating the

4  employment decision.  Estevez, 129 Wn. App. at 800.  An employee may show the employer's

5  reasons were pretextual "either directly by persuading the court that a discriminatory reason

6  more likely motivated the employer or indirectly by showing that the employer's proffered

7  explanation is unworthy of credence."  Id. at 801.  Like Mr. Wilton's disparate treatment claim,

8  his retaliation claim cannot survive summary judgment because he has not established

9  Defendant's reason for terminating his employment is unworthy of credence.  MSI produced

10  evidence that it stopped producing and marketing moving floor systems in 2011 and had already

11  begun shutting down that part of its business.  In light of that explanation and Mr. Wilton's

12  failure to produce evidence rebutting that reason, Mr. Lutz has not shown that his complaint was

13  a substantial factor motivating his termination.  The Court, therefore, GRANTS Defendants'

14  motion for summary judgment on Mr. Wilton's retaliation claim.

15  **C.   Wrongful Termination in Violation of Public Policy**

16      Mr. Wilton alleges a claim of wrongful termination in violation of public policy because

17  his employment was terminated on the basis of age and in retaliation for complaining about age

18  discrimination.  Dkt. # 34 at 22-23.  Although it is true that Washington has a strong public

19  policy against discrimination and retaliation, Int'l Union of Operating Eng'rs, Local 286 v. Port

20  of Seattle, 164 Wn. App. 307, 315-16 (2011), the finding of a strong public policy alone is

21  insufficient to defeat summary judgment

22      To establish the tort of wrongful discharge in violation of public policy, Mr. Wilton must

23  prove "(1) the existence of a clear public policy (clarity element); (2) that discouraging the

24  conduct in which [he or she] engaged would jeopardize the public policy (jeopardy element);

25  and (3) that the public-policy-linked conduct cause the dismissal (causation element)."  Hubbard

26  v. Spokane Cnty., 146 Wn.2d 699, 707 (2002).  Finally, the defendant must not be able to

27

28  ORDER GRANTING IN PART MOTION
FOR SUMMARY JUDGMENT - 11

1  provide an overriding jusitification for the discharge (absence of justification of element).  Id.

2  To establish the jeopardy element, Mr. Wilton must show that other means of promoting the

3  public policy are inadequate.  Korslund v. DynCorp Tri-Cities Servs., Inc., 156 Wn.2d 168, 181-

4  82 (2005).

5      Whether the jeopardy element has been satisfied is usually a question of fact.  Id.

6  However, "the question whether adequate alternative means for promoting public policy exist

7  may present a question of law."  Id. at 182.  Here, Mr. Wilton satisfies the clarity element of his

8  claim, but he fails to mention, let alone establish, the other elements of his claim.  To his

9  detriment, Mr. Wilton has not provided a single reason why the remedies provided by the

10  WLAD, the law on which he relies for the clarity element, are inadequate to promote the public

11  policy against discrimination and retaliation.  Id. at 183.  As a result, Mr. Wilton's claim of

12  wrongful termination in violation of public policy cannot survive summary judgment.  The Court

13  GRANTS Defendants' motion for summary judgment on Mr. Wilton's claim of wrongful

14  termination in violation of public policy.

15  **D.    Negligent Infliction of Emotional Distress**

16      In Washington, a "defendant has a duty to avoid the negligent infliction of mental

17  distress."  Francom, 98 Wn. App. at 863.  The claim may exist in the employment context, but

18  only to the extent that it is not based on an employer's disciplinary decision or when the only

19  factual basis for emotional distress was a discrimination claim.  Chea v. Men's Wearhouse, Inc.,

20  85 Wn. App. 405, 412-13 (1997).  When a plaintiff alleges that nondiscriminatory conduct

21  caused him separate emotional injury, he may maintain a claim for negligent infliction of

22  emotional distress.  Mr. Wilton contends that his harassment claim is not the only factual basis

23  for the emotional distress claim.  However, he expressly argues that his emotional distress was

24  caused by the "effects of the ageist comments, the wrongful termination, and from the retaliatory

25  behavior."  Dkt. # 34 at 22.  Mr. Wilton's claim is duplicative of his discrimination claims and

26  therefore, the Court GRANTS Defendants' motion for summary judgment and dismisses Mr.

27

28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT - 12

1    Wilton's claim of negligent infliction of emotional distress.

2    **E.    Intentional Infliction of Emotional Distress**

3           To prevail on a his claim of intentional infliction of emotional distress, also called

4    "outrage," Mr. Wilton must show (1) extreme and outrageous conduct, (2) intentional or reckless

5    infliction of emotional distress, and (3) severe emotional distress.  Robel v. Roundup Corp., 148

6    Wn.2d 35, 51 (2002).  Like Mr. Wilton's claim of negligent infliction of emotional distress, his

7    claim of intentional infliction of emotional distress duplicates his discrimination claims and

8    therefore, Defendants' motion fo summary judgment on this claim is GRANTED.  Anaya v.

9    Graham, 89 Wn. App. 588, 596 (1998) (affirming dismissal of outrage claim as duplicative of

10   discrimination claim).

11   **F.    Failure to Pay Wages**

12          Plaintiff contends that Defendants owe him money for vacation time he accrued during

13   his employment, but never used.  He asserts both a statutory right and a contractual right to

14   receive money in lieu of vacation.  Dkt. # 34 at 15-20.

15          Under Washington law, "employers are not required to pay employees for unused

16   vacation time unless the employer agrees to do so, or if the employer has a policy of doing so

17   which creates an expectation by the employee of receiving pay for unused vacation."  Richards

18   v. Image Sensing Sys. Inc., 2011 WL 5588721, at *6 (W.D. Wash. Nov. 16, 2011).  Contrary to

19   Mr. Wilton's contention, McGinnity v. AutoNation, Inc., 149 Wn. App. 277 (2009) does not

20   stand for the proposition that accrued, but unused vacation time constitutes wages due to an

21   employee following the employee's separation from employment.  See McGinnity, 149 Wn.

22   App. at 10.  Rather, the court in McGinnity declined to consider whether vacation time

23   constitutes wages under Washington law.  "The question of whether the class could recover

24   under a statutory wage claim theory is entirely different from the characterization of an award of

25   damages under RCW 49.48.030," a statute that provides plaintiffs with the right to recover

26   attorney fees where they have successfully recovered judgment for wages or salary owed to

27

28   ORDER GRANTING IN PART MOTION
     FOR SUMMARY JUDGMENT - 13

1   them.  McGinnity, 149 Wn. App. at 283; RCW 49.48.030.

2       Mr. Wilton also bases his claim for accrued but unused vacation time based on the theory

3   that MSI breached its promise of specific treatment in specific situations. Dkt. # 34 at 17-20.

4   While it may be true that "employers may be obligated to act in accordance with policies as

5   announced in handbooks issued to their employees" even absent a contractual agreement, the

6   Court finds that the circumstances which obligate an employer to act in a specific way are not

7   present.  See Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 60 (2008)

8   (quoting Thompson v. St. Regis paper Co., 102 Wn.2d 219, 223 (1984)).

9       To establish a claim of breach of promise of specific treatment in specific situations, Mr.

10  Wilton must show "(1) that a statement (or statements) in an employee manual or handbook or

11  similar document amounts to a promise of specific treatment in specific situations, (2) that the

12  employee justifiably relied on the promise, and (3) that the promise was breached." Korslund,

13  156 Wn.2d at 184-85.

14      MSI's employee handbook provides that "[p]ay in lieu of unused vacation at any time may

15  be provided only upon separation from employment, after all encumbrances are met

16  satisfactorily."  Dkt. # 35 at 44.  Elsewhere in the employee handbook, MSI explains that

17  "vacation pay may be included in the final check" following an employee's separation from the

18  company.  Id. at 50.  While this language may, in certain circumstances, create a promise of

19  specific treatment in specific situations, Mr. Wilton has not shown that he justifiably relied on

20  this language, or even knew about this provision before his termination.  After Mr. Wilton

21  testified that he did not have any written agreement regarding vacation pay, he explained that

22      Well, it was just that when we decided on the figure, we both agreed that I would
        go to work for the smaller amount.  I was asking for a lot more, and he says,
23      "well..." and I said, "Well, how about vacations"? and I think it's - - he told me to
        check with Thelma once, and I checked with her and she said there was a
24      handbook, and it was - - you know, I think it was - - I can't remember, to be honest
        with you, because I never saw - - I never read the handbook.
25
    Dkt. # 29-2 at 41.
26
27      Mr. Wilton has failed to demonstrate "any pretermination familiarity with the 'promises of

28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT - 14

1  specific treatment in specific situations' which he alleges were contained therein." <u>Bulman v.</u>
2  <u>Safeway, Inc.</u>, 144 Wn.2d 335, 350 (2001).  Mr. Wilton could not have relied on a policy of
3  which he was not aware during his employment.  The Court, therefore, GRANTS Defendants'
4  motion for summary judgment on Mr. Wilton's wage claim.

5  **IV.  CONCLUSION**

6       For all of the foregoing reasons, the Court GRANTS IN PART Defendants' motion for
7  summary judgment (Dkt. # 28).  The Court GRANTS the motion as to Mr. Wilton's claims of
8  disparate treatment, retaliation, wrongful termination in violation of public policy, negligent and
9  intentional infliction of emotional distress, and failure to pay wages.  The Court DENIES
10 Defendants' motion as to Mr. Wilton's hostile work environment claim.

11
12      DATED this 12th day of April, 2013.
13
14                              *MM S Casnik*
15                              Robert S. Lasnik
16                              United States District Judge
17
18
19
20
21
22
23
24
25
26
27
28  ORDER GRANTING IN PART MOTION
    FOR SUMMARY JUDGMENT - 15